IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH L. TRICE, JR., | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-14-0064 |
| BOBBY P. SHEARIN, et al. | * | |
| Defendants | * | |
| | * | |
| | *** | |

## MEMORANDUM OPINION

Defendants move for dismissal or summary judgment in the above-captioned civil rights case. ECF 18. Plaintiff opposes the motion. ECF 22 & 23. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendants' motion, construed as a motion for summary judgment,[1] shall be DENIED.

### Plaintiff's Allegations

Plaintiff Kenneth L. Trice, Jr. ("Trice"), an inmate incarcerated at North Branch Correctional Institution ("NBCI"), asserts that his right to practice his chosen religion was abridged by defendants when he was denied the opportunity to participate in Native American ceremonial worship. Trice indicates that after his informal efforts to have Native American worship services instituted at NBCI went unanswered, he filed an Administrative Remedy Complaint ("ARP") in May of 2011. Warden Shearin indicated that due to NBCI's design, no outside space was available to accommodate Native American Services and Trice's request was dismissed. ECF 1, p. 5. Trice appealed the denial of his administrative remedy through an

---

[1] *See* Fed. R. Civ. Proc. 12(d) ("[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

appeal to the Inmate Grievance Office ("IGO"). Ten days prior to his IGO hearing, plaintiff was transferred to Western Correctional Institution ("WCI"), a facility that offers a Native American worship service. Plaintiff indicates that his transfer was an effort to moot his claim. *Id.*, p. 6. Nonetheless, the Administrative Law Judge ("ALJ") did not find the claim mooted, but found in favor of NBCI, holding that there was no outside space available to conduct Native American ceremonial worship. *Id*.

On January 4, 2013, plaintiff was transferred back to NBCI. Plaintiff renewed his request for outdoor Native American worship. Plaintiff states he requested use of the handball court weekly based on Chaplain Lamp's testimony at the IGO hearing that the court was available for ceremonial purposes. Lamp took no action other than to tell plaintiff to contact him later. *Id.*, p. 7. Plaintiff filed a new ARP on May 29, 2013, regarding his desire for Native American worship service. The ARP and his appeals were dismissed as repetitive. *Id.*, p. 7.

### Defendants' Response

Defendants offer that plaintiff requested Native American congregate services on a "grassy area, free of traffic and interference, for prayer circle purposes." ECF 18, Ex., 1, p. 12 & 18. Due to the architectural structure of NBCI, no grass area, which is not up against a housing unit or security fence, and no place free from interference with the security of the institution was identified. *Id*., p. 12. Defendants note that after a hearing the ALJ decided that plaintiff's First Amendment rights were not violated as NBCI had no area that would not be a high security risk and Trice had been moved to WCI, where he could attend Native American ceremonies. *Id*., Ex. 2, p. 110.

Defendants further indicate that NBCI consists of four housing units: Unit 1 - the primary segregation unit; Unit 2 - the Multi-Classification Unit for inmates classified as

Maximum II, those requiring special programming or mental health attention, or inmates coming off segregation who staff believe would have difficulty adjusting to a less structured environment; and Housing Units 3 and 4, which are general population units. *Id*., Ex. 2. Maximum II inmates are those who have been involved in a serious assault in the past five years, have escaped from secure confinement housing, have been involved in an incident resulting in death, have committed a sexual assault while incarcerated, or engaged in verified behavior detrimental to operation or security of a DOC facility, including gang activity, within the past five years. *Id.,* Ex. 1, p. 43.

Trice was confined on Housing Unit 2 at NBCI after leaving administrative segregation on April 28, 2014. Chaplain Lamp avers that inmates confined to Housing Unit 2 are on modified housing status and are limited in their congregate interactions with other inmates until staff can complete the screening process to determine whether the inmate can participate in congregate services. *Id*., Ex. 3; Ex. 4.  Inmates within Housing Unit 2 are permitted to worship within their cell or housing unit and have access to a chaplain or spiritual leader. *Id*.

Defendants indicate that Native American services began at NBCI on May 27, 2014.  A Native American volunteer group called the Iron House Council assists and guides the services, which include outside congregate services. *Id*., Ex. 3.  The Native American services are available to general population inmates housed in NBCI Housing Units 3 & 4.  Defendants indicate that NBCI is in the process of determining which inmates in Housing Unit 2 may participate in the Native American congregate services. *Id*.

**Standard of Review**

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim entitling him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Rule 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. at 322-23. Therefore, on those

issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. *Id*.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The act provides in part:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (2000).

Religious observances need not be uniform to merit First Amendment protection. *See Morrison v. Garraghty*, 239 F.3d 648, 659 (4th Cir. 2001) (citing *Dettmer v. Landon*, 799 F.2d 929, 932 (4th Cir. 1986) (prison officials may not deny religious articles to Wiccans based on officials' definition of what constitutes a religion)). "Courts are not arbiters of scriptural interpretation." *Thomas v. Review Bd*, 450 U.S. 707, 714 (1981). Nonetheless, where there is a legitimate security concern at issue, such as insuring compliance with rules of behavior during worship services, temporary suspension of attendance at congregate worship does not violate the First Amendment. *See Turner*, 482 U.S. at 89-91 (1987) (restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the Constitution).

Plaintiff refutes several of Defendants' contentions concerning the establishment of congregate Native American services as well as his participation in same. Principally, he notes that the Native American congregate services now held at NBCI are held outside. ECF No. 22, p. 3. Defendants do not explain what changed at NBCI to permit outside congregate prayer since the dismissal of plaintiff's grievances and Lamp's assertion at the IGO hearing that there was no suitably secure outside space to hold services, nor do defendants address the delay in instituting congregate Native American services at NBCI.

Further, plaintiff indicates that the Iron House Council performs religious services irregularly, which does not comport with his request for weekly congregate services. *Id*., p. 4. Plaintiff indicates that the Iron House Council held three one-hour services over a four-month period, none of which he was permitted to attend. ECF No. 22. He also claims that the Iron House Council has now advised him that he must follow the Lakota religion, teachings, and

ways, instead of the Cherokee religion and teachings, which plaintiff states he has held his entire life. ECF 23. Defendants have failed to address these concerns.

Plaintiff also counters defendants' suggestion that he was not permitted to participate in congregate prayer because he resides in Housing Unit 2. Plaintiff states that he is, in fact, a general population inmate with a security classification of Level 1. ECF No. 22, p. 20. He provides evidence that he was screened for Maximum Level II, but did not fit the security criteria, and therefore remained Maximum Security Level I. ECF No. 22, p. 20. Plaintiff offers that he has access to the dayroom, court yard, dining hall, library, medical department, visiting room, and other areas of the institution without restraints or officer escort. *Id.*, p. 6. Defendants have failed to explain, specifically as to plaintiff, the rationale for his being housed on Housing Unit 2 and why while housed on Housing Unit 2 as a Level 1 inmate he was not permitted to attend congregate services.

Lastly, plaintiff maintains that contrary to defendants' contention, he cannot adequately practice his faith within his housing unit. He states that due to the nature of a Native American worship ceremony, during which smoke is offered up to the Great Spirit, he cannot practice his faith within the confines of the institution. *Id.* Defendants have failed to address this concern, but rather have stated baldly that inmates on Housing Unit 2 have access to a chaplain and may practice their faith within their cell or the housing unit.

In light of the foregoing material disputes of fact, the pending motions for summary judgment shall be denied. A separate order, along with an order setting forth the schedule in this case, follows.

February 4, 2015_____                        _____/s/_____
Date                                                                                 James K. Bredar
                                                                                           United States District Judge